IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| CHAVELLA K. KESSLER,<br><br>        Plaintiff,<br>vs.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>        Defendant. | No. 15 cv 130 EJM<br><br>ORDER |

Plaintiff brings this action seeking judicial review of the Commissioner's denial of her application for social security disability income and supplemental security income benefits. Briefing concluded July 6, 2016. The court has jurisdiction pursuant to 42 USC §405(g). Affirmed.

Plaintiff asserts that the Administrative Law Judge (ALJ) (1) failed to properly calculate plaintiff's residual functional capacity (RFC) by failing to give proper weight to the opinion of treating physician James LaMorgese, M.D., and (2) failed to properly evaluate her subjective allegations. Accordingly, she asserts that the Commissioner's decision is not supported by substantial evidence on the record as a whole.

> [R]eview of the agency decision is limited to whether there is substantial evidence on the record as a whole to support the [Commissioner's] decision. This requires [the court] to do more than merely parse the record for substantial evidence supporting the [Commissioner's] decision. [The court] also must consider evidence in the record that detracts from the weight of the decision. Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.

Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992.)

Plaintiff is a 37-year-old woman with an Associate's Degree in applied science. She is 5'1", weighs 320 pounds, and smokes. She filed an application for disability benefits alleging severe arthritis in the back and knees, COPD/asthma and scars on her lungs. She previously worked as a cashier, nurse, laboratory technician and phlebotomist. The ALJ determined that she had a variety of impairments and limitations, and determined her RFC accordingly. He found that plaintiff could not perform her past work, but, based on testimony from a vocational expert (VE), found that she could perform other work existing in significant numbers in the national economy, Tr. 26-27, and thus was not disabled.

Regarding the opinion of Dr. LaMorgese, in a May 2012 letter, Dr. LaMorgese opined that plaintiff could not stand for more than 20-30 minutes at a time or walk for more than 20-30 minutes at a time (Tr. 439). He further opined that plaintiff could sit for 2 hours or less and would need to change positions at least every 10 minutes (Tr. 439). In addition, he opined that she could rarely stoop or climb and should not kneel or crawl (Tr. 439), and could lift and carry 20 pounds or less (Tr. 439). Finally, Dr. LaMorgese opined plaintiff could only work 4-6 hour shifts (Tr. 439).

Based largely on the testimony of Dr. LaMorgese, and others, the ALJ determined that plaintiff retained the RFC to perform sedentary work with the following limitations:

- Can lift and carry 10 pounds occasionally and 5 pounds frequently;
- Can stand and/or walk for 4 hours in a 8-hour workday;
- Can sit for 4 hours in an 8-hour workday;
- Will need to change postural positions in equal 30-minute increments throughout the day by standing/walking every 30 minutes and then sitting every 30 minutes before standing/walking 30 minutes;
- Can occasionally climb, balance, stoop, and crouch, but cannot kneel or crawl;
- Can occasionally reach overhead bilaterally;
- Limited to occasional exposure to extreme cold or humidity;

2

- Should have no exposure to pulmonary irritants such as fumes, odors, dusts, and gases; and
- Can never climb ladders, ropes, or scaffolds (Tr. 16-17).

The ALJ adopted the vast majority of Dr. LaMorgese's suggested limitations, although not all, and some in different form.

Plaintiff first argues that the ALJ erred by not adopting Dr. LaMorgese's opinion that she could not stand for more than 20-30 minutes at a time (Tr. 439). However, the ALJ found plaintiff would need to change postural positions in equal 30-minute increments throughout the day by standing/walking every 30 minutes and then sitting 30 minutes before standing/walking 30 minutes (Tr. 17). This is adopting Dr. LaMorgese's limitation in a different form and is not error.

Dr. LaMorgese's also opined that plaintiff could only work 4-6 hour shifts. The ALJ gave this opinion little weight because it was based on conjecture, rather than an objective findings, and was contradicted elsewhere in the record, including by himself (Tr. 25, 439). A few weeks before he authored his opinion, Dr. LaMorgese noted that plaintiff's lungs were clear to auscultation and she had no joint swelling of her knees or shoulders (Tr. 440). Additionally, her October 2012 right and left knee examinations revealed intact sensation, 5/5 motor strength, and no instability (Tr. 22, 501). Plaintiff reported no chest pain or shortness of breath and her respiratory examination was normal (Tr. 501). Plaintiff's balance, strength, cranial nerves, and muscle bulk and tone were normal (Tr. 22, 507). She did not exhibit an ataxic gait or costovertebral angle (CVA) tenderness, and her lung and cardiovascular examinations were unremarkable (Tr. 507). Ronald Dose, M.D., assessed that plaintiff was "generally doing well" (Tr. 508).

In December 2012, plaintiff underwent a lumbar spine magnetic resonance imaging (MRI) to assess her alleged back pain and leg burning and numbness (Tr. 521). The MRI revealed a mild posterior disk bulge at L4-5 with disk desiccation and a minimal broad-based right far-lateral disk protrusion at L3-4, but was otherwise unremarkable (Tr. 521). Plaintiff's January 2013 venous duplex scan to assess her alleged leg pain and swelling also revealed normal compressibility, no visible clot, and no evidence of femoropopliteal deep vein thrombosis (DVT)[1] (Tr. 22, 519). These mild objective findings are inconsistent with Dr. LaMorgese's opinion that plaintiff could only work 4-6 hour shifts, and thus support the ALJ's decision to give that part of the opinion little weight (Tr. 25, 439).

In evaluating plaintiff's RFC, the ALJ also considered the results of her August 2012 Functional Capacity Evaluation (Tr. 470-474). The ALJ gave the evaluation some weight because it showed plaintiff could sit for 30 minutes at a time, which was consistent with the record and the ALJ's RFC finding (Tr. 16-17, 26, 470). See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The Functional Capacity Evaluation also showed that plaintiff was able to stand/walk for 60 minutes at a time (Tr. 470). However, the ALJ gave this observation little weight because the record as a whole indicated she would need to alternate sitting and standing at 30-minute increments throughout the day (Tr. 26). Moreover, although the Functional Capacity Evaluation showed plaintiff could lift and carry up to 17.5 pounds, the ALJ limited plaintiff to lifting and carrying 10 pounds

---

[1] DVT is a clotting of blood in a deep vein of an extremity. http://www.merckmanuals.com/professional/cardiovascular-disorders/peripheral-venous-disorders/deep-venous-thrombosis-dvt (last visited June 6, 2016).

4

at most (Tr. 16, 470). The ALJ's RFC finding here is actually more restrictive than the Functional Capacity Evaluation.

Stanley Matthew, M.D.'s December 2013 opinion also supports the ALJ's RFC finding (Tr. 526-527). Dr. Matthew opined that plaintiff could sit for 4 hours total in an 8-hour day and stand for 4 hours total in an 8-hour day (Tr. 526). The ALJ gave these portions of Dr. Matthew's opinion great weight because they were consistent with the objective findings as discussed above (Tr. 25,440, 501, 507). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Plaintiff argues the ALJ erred in classifying Dr. Matthew as a "treating source" because the record does not contain any of his treatment records. However, as the ALJ noted, Dr. Matthew stated that he had been treating plaintiff for one year (Tr. 22, 526). Plaintiff also testified about Dr. Matthew's treatment at the December 2013 administrative hearing (Tr. 44, 53). In her May 2014 request for review of the ALJ's decision, plaintiff's former representative repeatedly referred to Dr. Matthew as a treating source (Tr. 296-298). Thus, the ALJ allowably found that Dr. Matthew was, in fact, a treating source. *See* Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008).

The ALJ next considered plaintiff's obesity in her RFC analysis under Social Security Ruling (SSR) 02-1p, which provides guidance on the evaluation of obesity in disability claims under the Act (Tr. 16). The ruling states that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments separately. *Id.* The ruling, however, notes that the agency "will not make assumptions about the severity or functional effects of obesity combined with other impairments." *Id.*

Rather, the severity of functional limitations obesity may cause on other impairments should be based on the record evidence. *Id.*

The ALJ reviewed the record evidence and found at step two that plaintiff's obesity was a severe impairment (Tr. 13). The ALJ then proceeded to discuss SSR 02-1p (Tr. 16). Importantly, the ALJ stated that she considered plaintiff's obesity in evaluating her ability to perform basic work activities and in formulating her RFC (Tr. 16). The ALJ also discussed plaintiff's obesity throughout her decision and specifically found that obesity exacerbated plaintiff's musculoskeletal and respiratory impairments (Tr. 20-24). However, plaintiff failed to comply with numerous recommendations that she diet and lose weight in order to manage these impairments (Tr. 19-20, 24, 427, 431, 437, 452, 455). *See* Nelson v. Sullivan, 966 F.2d 363, 367 (8th Cir. 1992) (plaintiff failed to comply with weight loss recommendations). Nonetheless, the ALJ accounted for any musculoskeletal and respiratory limitations caused by plaintiff's obesity by limiting her to a range of sedentary work with no exposure to pulmonary irritants such as fumes, odors, dusts, and gases (Tr. 16-17). Plaintiff has not provided any evidence that she suffered functional limitations from her obesity not already accounted for in the ALJ's RFC finding (Tr. 16-17).

In sum, the ALJ properly evaluated plaintiff's RFC. In making this determination, the ALJ considered plaintiff's obesity, her Functional Capacity Evaluation, and the opinions of her treating physicians and the state agency medical experts. A claimant's RFC is determined at step four, where claimant bears the burden of proof. Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). Here, plaintiff has not shown the need

for additional limitations beyond those the ALJ accounted for in her RFC finding (Tr. 16-17).

The ALJ properly found that plaintiff's subjective statements were not entirely credible. Credibility questions concerning a plaintiff's subjective testimony are "primarily for the ALJ to decide, not the courts." Moore, 572 F.3d at 524 (quoting Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) (internal quotation marks omitted)).

Plaintiff asserts error regarding the ALJ's credibility analysis in that the ALJ was "unduly harsh" in considering her non-compliance with recommendations that she quit smoking and lose weight to help her respiratory and musculoskeletal complaints (Tr. 24). The Eighth Circuit Court of Appeals has repeatedly held that a claimant's failure to follow a recommended course of treatment weighs against her credibility. See Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007); Johnson, 240 F.3d at 851; Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001).

Dr. LaMorgese spoke to plaintiff about the possibility of bariatric surgery, but she stated that she was not interested (Tr. 19-20, 427, 452). See Goodale v. Halter, 257 F.3d 771, 774 (8th Cir. 2001) (plaintiff refused surgery, which indicated his alleged impairments were not disabling); Kennedy v. Astrue, 853 F. Supp. 2d 914, 932 (W.D. Mo. 2012) (ALJ properly discredited plaintiff's subjective complaints where she did not pursue recommended bariatric surgery to alleviate back pain due to obesity). Dr. LaMorgese also warned plaintiff that she needed to diet and lose weight, but she did not take dieting seriously and made no significant attempts to lose weight (Tr. 20, 431, 437, 455). See Nelson, 966 F.2d at 367 (plaintiff's failure to follow numerous recommendations to lose weight in order to alleviate his symptoms undermined his credibility); Wright v. Astrue,

No. 08-3147-CV-S-ODS, 2009 WL 102692, at *6 (W.D. Mo. Jan. 15, 2009) (unpublished) (plaintiff not credible where she failed to follow medical advice that she lose weight to alleviate effects of obesity on other impairments).

Plaintiff did not comply with recommendations that she stop smoking (Tr. 24). A claimant's failure to follow medical recommendations to stop smoking weighs against her credibility. McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003); Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000); Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997). Although plaintiff stopped smoking for a month in March 2011, she resumed smoking three cigarettes per day in May 2011 (Tr. 19, 306, 427). Mary Henry, a registered nurse practitioner, discussed the importance of nicotine abstinence with plaintiff (Tr. 383). However, the following month, plaintiff stated that despite her chronic lung disease, she continued to smoke intermittently (Tr. 428). Dr. LaMorgese warned plaintiff that she "really should not smoke" (Tr. 428). Despite this warning, plaintiff continued to smoke in August 2011 and Dr. LaMorgese noted that she "has not done anything about that" (Tr. 432). In September 2011, he again noted that although he had told plaintiff on multiple occasions that she needed to stop, she did not seem serious about quitting smoking (Tr. 455). By October 2012, plaintiff was smoking one-fourth to one-half packs per day (Tr. 506). Such non-compliance undermines her credibility.

In addition to non-compliance, the ALJ discussed several relevant factors in her credibility analysis, and substantial evidence supports her conclusions. The ALJ considered plaintiff's inconsistent statements (Tr. 23). See Gaddis v. Chater, 76 F.3d 893, 896 (8th Cir. 1996) (unpublished) (inconsistent statements detract from credibility). Plaintiff testified that she needed to elevate her legs twice a day, but the ALJ found no

such recommendation from a treating source (Tr. 24, 54). Moreover, plaintiff's January 2013 testing to assess her alleged leg pain and swelling revealed normal compressibility and no evidence of visible clot or DVT (Tr. 24, 519). Plaintiff also testified she used Lasix twice a day, but the record indicates she only used it sparingly at night (Tr. 23, 54, 506). Further, in her Disability Report, plaintiff said she had worked only one job, as a part-time cashier, in the past 15 years (Tr. 23, 239). However, she inconsistently testified that she also worked as a nurse, lab technician, and phlebotomist in the last 15 years (Tr. 23, 42-43, 294). Such inconsistent statements undermine plaintiff's credibility.

The ALJ found plaintiff not fully credible based on his work history, daily activities and treatment record. This is also supported by the record.

Based on the record, it is the court's view that the Commissioner's decision is supported by substantial evidence.

It is therefore

ORDERED

Affirmed.

July 14, 2016

Edward J. McManus, Judge
UNITED STATES DISTRICT COURT